GEORGE F. GREEN *v.* JOSHUA SKINNER.

NOTE. *Payment by new note. Principal and surety. Discharge of indorser.*
  Where a note is indorsed and transferred by the payee to a bank,
  and at maturity the makers take it up by a new note indorsed by
  said payee and another, an accommodation indorser on the first
  note not consenting thereto, is discharged, although, for the pur-
  pose of holding him liable, the old note is not marked canceled,
  but is redelivered by the makers to the payee. *Lapiece* v. *Hughes,*
  24 Miss., 69.

FROM the circuit court of Washington county.
HON. R. W. WILLIAMSON, Judge.
The case is stated in the opinion.

*Yerger & Percy,* for appellant.

An unbroken line of decisions in this state holds that the in-
dorsement of the note made appellant a surety, and that the
extension granted the principal, for a valuable consideration,
for a definite length of time, not agreed to by the surety, dis-
charged him. *Brown* v. *Prophit,* 53 Miss., 649; *Wright* v.
*Watt,* 52 *Ib.,* 634; *Meggett* v. *Baum,* 57 *Ib.,* 22; *Polking-
horne* v. *Hendricks,* 61 *Ib.,* 366; *Moore* v. *Redding,* 69 *Ib.,*
841. The case of *Hunt* v. *Knox,* 34 Miss., 655, is not appli-
cable. This case falls within the rule announced in *Lapiece* v.
*Hughes,* 24 Miss., 69.

*Skinner & Lewenthal,* for appellee.

When appellee, the payee of the note, reacquired it, he was
restored to his original position. *McLemore* v. *Hawkins,* 46
Miss., 715. It has not been shown why the principal of that
case does not apply here. The contention that *Lapiece* v.
*Hughes,* 24 Miss., 69, applies, cannot be maintained, even if
the doctrine there announced should still be approved. The
cases differ in several particulars.

Appellee was in no position to grant any extension to Dunbar. He could neither surrender the note nor grant the extension, yet he is sought to be charged with the responsibility, because it was his indorsement or consent which produced the unlawful concession granted by the bank. The bank had no knowledge of his suretyship, and to it or any other innocent holder, appellant had bound himself as principal. As no act had been committed that discharged the makers from liability, it follows that the acts of the bank did not release appellant. The note was not paid, but simply reacquired by Skinner. It was an express condition, when the new note was given, that his rights on the original note should not be impaired, and it was returned to him bearing the bank's indorsement. This stipulation was valid and effectual to save the rights of Skinner. *Hunt* v. *Knox*, 34 Miss., 655. It was not essential that the surety should be a party to the agreement. Byles on Bills, § 256; 24 Am. & Eng. Enc. L., 830; 70 N. Y., 537; 125 Mass., 28.

The test of the case is whether the transaction complained of, be it a surrender or an extension, at any time prevented appellant from proceeding against the makers. 24 Am. & Eng. Enc. L., 833; *Buckingham* v. *Walker*, 48 Miss., 609.

WOODS, J., delivered the opinion of the court.

Without considering in detail the errors assigned on the court's action in rulings on the many pleadings, and in instructions given and refused, we shall look at the substantial contention, which involves everything complained of.

In the year 1889, Rucks and Dunbar executed their note in favor of Joshua Skinner for the sum of $3,000, due and payable at the Merchants' & Planters' Bank January 1, 1890. The note was indorsed by Geo. F. Green, the appellant, for accommodation, before delivery, and the character of this indorsement was known to all the parties to that transaction. At the maturity of the note, the makers were unable to pay,

and sought an extension from the Merchants & Planters' Bank, the owner and holder of the paper, it having been transferred and indorsed and discounted to the bank by Skinner, the payee, a day or two after its execution. The bank expressed a willingness to renew or extend if this arrangement could be effected, viz.: Rucks and Dunbar were to give their two promissory notes for $1,500 each, with Skinner and one S. T. Rucks as indorsers, and the accrued interest with the discount on the new notes, amounting to $200, should be paid, it was agreed also, in cash. In pursuance of the understanding between Rucks and Dunbar and the bank, Dunbar sought Skinner, laid before him the terms upon which the bank would give time, and secured Skinner's consent and indorsement of the two $1,500 notes. The two new notes were made and indorsed by Skinner and S. T. Rucks, as agreed, and the interest on the old note and discount of the two new ones paid in money, and the original note for $3,000 was delivered up by the bank, its owner and holder, to Dunbar, one of its makers, under the agreement already referred to. It will thus be seen that not only were new notes taken by the bank and the old one surrendered to the maker, but that Geo. F. Green, the surety on the old one, knew nothing of the arrangement made for extension of time of payment, and, of course, did not sign the two $1,500 notes. It will be observed, also, that a new indorser was procured, S. T. Rucks.

There is no controversy on the facts as stated thus far, and the only controversy is as to the agreement had between Dunbar and Skinner at the time the latter consented to the new arrangement with the bank. This disagreement between Skinner and Dunbar is immaterial, in our judgment, and we therefore adopt Skinner's version. According to this, Skinner readily consented to indorse the new notes for $1,500 each, on the condition had with Dunbar that he, Skinner, was not releasing Green, the surety on the old $3,000 note, from any legal liability on his indorsement, and that the old note should be re-

turned to him uncanceled, unstamped paid by the bank, by Dunbar after he had taken it up.

The only question, then, is, was Geo. F. Green discharged from liability on the old note by the transaction which ended in its surrender by the holder to the maker? We are clearly of opinion that, notwithstanding the understanding between Dunbar, the maker, and Skinner, the payee and one of the indorsers, the dealings between the bank, the holder, and Dunbar, the maker of the old note, there was, in effect and in fact, a payment of that note. It is not only an extension of time for payment of the note, but it is a new contract between the holder and maker of it, evidenced by new notes with a new surety demanded. by the holder and furnished by the maker. It is the acceptance of new security in lieu of the old, and a surrender of the prior evidence of indebtedness by its holder to its maker. Skinner was not the holder of the note at the time the old note was taken up from the bank by Dunbar, its maker, and the new contract consummated.

It is of no avail that Dunbar, after the surrender of the note to him, delivered it to Skinner, under their agreement. He did not thereby become a purchaser of it, and was not restored to his rights as payee thereby. *Hunt* v. *Knox*, 34 Miss., 655, is readily distinguishable from the case at bar, and is in perfect harmony with the foregoing views advanced by us. In *Lapiece* v. *Hughes*, 24 Miss., 69, we find the rule announced which is to be applied in this case. Yerger, J., speaking for the court in that case, said: "While it is true that, if either of the subsequent indorsers of the original note had taken it up by giving their own in payment of it, such party might have sued Hughes upon his prior indorsement, yet, we think it equally clear, whenever the original note was taken up or discharged by the substitution of another note by the maker, all the parties to the first note were discharged thereby from liability upon it, unless they entered into some new contract or agreement to continue their liability."

These views sufficiently indicate the course which should be taken if another trial is desired in the court below.

*Reversed and remanded.*